WINEBURGH et al. v. HOBSON.*

No. 7006.

Circuit Court of Appeals, Fifth Circuit.

May 5, 1934.

W. T. Henry and Harold H. Young, both of Dallas, Tex., for appellants and cross-appellees.

Rhodes S. Baker and W. R. Harris, both of Dallas, Tex., for appellee and cross-appellant.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit is in equity to charge appellant Wineburgh as plaintiff's trustee and for an accounting, and, in the alternative, on behalf of the United Advertising Corporation of Texas, whose stock appellant and appellee jointly own. The grounds are, the diversion from their agreed uses of earnings on stocks in three Texas poster companies standing in Wineburgh's name, five-eighths as his own and three-eighths as trustee for plaintiff, subject to notes given in part payment for the stock by the Hobson Company owned five-eighths by Wineburgh and three-eighths by Hobson, the holding company they formed to acquire the stocks and act as fiscal agent for the United of Texas. The claim is that the earnings sued for as diverted were distributed to Wineburgh as the joint property of Wineburgh and Hobson, or of the United of Texas, under an express trust, to use them to pay the notes the Hobson Company gave and other necessary expenses.

Appellant denies that he was trustee for or that he did gather and administer as trustee, or in any way, the earnings on the stock he and Hobson owned. He declares that they were gathered and administered by the Hobson Company as fiscal agent for the Texas companies, and on its own behalf as the maker of the stock notes; that the Hobson Company has properly accounted for and disbursed all moneys sent to it as dividends, in the case of the Dallas and Waco companies, in which Wineburgh and Hobson owned only part of the stock, and as transfers or deposits with it in the case of the United of Texas, in which they owned all. He insists further that, if any of the earnings have been improperly disbursed, since he neither received nor disbursed them, Hobson has no

*Petition for rehearing denied June 13, 1934.

suit for them against him. He says, in short, that he did not receive nor administer either as trustee or individually, a single dollar of the funds the Texas companies sent to New York; that the Hobson Company, as it was supposed to do, received them and disbursed them; and, if in the course of administration any wrong has been done under his dominance, which he particularly denies, the wrong has been to the particular corporation affected, and not to Hobson, and the action for it is not Hobson's but the corporation's.

The District Judge found the bill wanting in allegations and proof as a stockholders' bill under Equity Rule 27 (28 USCA § 723), and dismissed it in that respect. He found that the Hobson Company was charged with the payment of the obligations it had executed for the stocks. He found that its only source of payment was the resources of the Texas companies and the funds which might from time to time be sent by them to New York. He found, too, that "such funds were the income of the Hobson Corporation in New York." Notwithstanding this finding, he yet found that the funds were trust funds handled by Wineburgh through the agency of the Hobson Company, and sustained plaintiff's demand for an accounting. Upon that accounting, which was a full one, he found that no diversion or improper use of funds had occurred, except as to two items, $9,350 for audits which had been made during the seven-year period, and $2,499.99 paid to one Schlesinger. For three-eighths of these sums he gave plaintiff a decree. He also found that the surplus funds of the United of Texas, constituting its working capital in the hands of the Hobson Company, were trust funds in Wineburgh's hands, and gave plaintiff a decree for three-eighths of them.

Defendant is here complaining of the decree in plaintiff's favor, and particularly that part of it which, awarding plaintiff three-eighths of the surplus funds the United of Texas had on deposit with the Hobson Company, strips the Texas company of its working capital. Plaintiff by cross-appeal complains of the failure to find other diversions and to increase his recovery accordingly, and also complains of that part of the decree dismissing his stockholders' bill.

■ We think the defendant is right in the position he takes that he was not Hobson's trustee as to these funds, and is not accountable to him for them. We think the evidence overwhelms that he was not expected to and did not receive or disburse any of them either individually or as trustee, and that Hobson has no personal suit against him. It

is clear, we think, that, if Wineburgh is liable to any one in this suit, it is not to Hobson as his trustee, but to the United Company of Texas, which company he dominated as he did the Hobson Company, for any damage his domination might have caused it.

■ We do not agree with the District Judge that there is wanting allegation and proof sufficient to sustain the plaintiff's bill as a stockholders' bill under Equity Rule 27. We think that under the facts admitted in pleading and in proof sufficient has been alleged and shown to maintain the bill and sustain recovery in that form for any sums which the evidence shows the corporation has been deprived of by Wineburgh's wrongful actions. American Creosote Works v. Powell (C. C. A.) 298 F. 417, 420. We do not think, however, that any wrongful action against the company or diversion of its funds by Wineburgh has been shown. We think, on the contrary, that everything done by him in the management and conduct of the business of that company during the seven years he managed its business and affairs as sole voting stockholder has inured to the benefit of that company. We think, too, that it has been done with the knowledge and acquiescence and without the disapproval of plaintiff, Hobson, and has been fairly within the limits of good and prudent management.

The District Judge found that this was so as to all of the items except the two small ones mentioned. Right as to all the others, we think he erred as to these. The facts upon which the rights of the parties depend are undisputed. Hobson and Wineburgh, desiring to buy from the United Advertising Corporation of New Jersey all of the stock of the United Advertising Company of Texas and part of the stocks of the Dallas Poster and Waco Corporations, hereafter called the Dallas and Waco companies, for part cash and part notes, entered into this agreement. The Hobson Advertising Corporation of New York, Hobson and Wineburgh owning its stock three-eighths and five-eighths, was to be formed as a holding company to execute the notes payable over a seven-year period, and beneficially hold the stocks which were to be issued to and held in trust for it by Wineburgh. It was understood by all concerned that the only assets the Hobson Corporation had with which to pay the notes were the stocks in the Texas companies, and that the earnings on these stocks were to be sent to it for handling and disbursement. Wineburgh, the president in New York, had general supervision over all the companies, and Hobson was made manager of the Texas companies.

Before the end of the first year, dissension over Hobson's management caused a serious breach, resulting in Hobson's discharge, a suit by Hobson against Wineburgh, and a settlement agreement embodied in a decree. Hobson sues on this agreement. It declares the stocks in the Texas companies originally held in trust for the Hobson Company to be beneficially owned by Wineburgh five-eighths and Hobson three-eighths. It provides that Hobson's three-eighths shall be held in trust by Wineburgh, and it directs Wineburgh to execute certificates so reciting. It provides that Wineburgh shall have exclusive voting rights over Hobson's stocks until the notes are paid, and that Hobson shall have all the other rights of a stockholder. It specifically declares, however, and this is of the utmost importance in this case that, though as between Wineburgh and Hobson the stocks are beneficially owned by them five-eighths and three-eighths, as to the United of New Jersey, they are, until the notes are paid, still to be regarded as owned by the Hobson Company and subject to be taken on execution as its property. It further definitely provides that the indebtedness of the Hobson Company to Wineburgh for moneys advanced to it and to the United of New Jersey shall be paid by the Hobson Company as funds come into its hands. There is a further provision that, if some other arrangement satisfactory to the United of New Jersey could be made as to Hobson Company's indebtedness to it, Hobson Company should be dissolved, but, until such arrangement is made, though the Hobson Company should be inactive, the indebtedness shall remain as it is. No different arrangement was made; the Hobson Company remained liable on the notes. It received and administered moneys sent it from time to time by the Texas companies, and paid off the notes as they matured. This was accomplished as to the Dallas and Waco companies by the declaration of dividends, and as to the United Company of Texas by transfer and deposit with the Hobson Company. The Hobson Company, with the full knowledge of Hobson, continued throughout the whole term for which the notes ran to act as the fiscal agent of United of Texas as it had been doing while Hobson was manager. During all of this time the notes were being paid off, and the business was being conducted without protest, complaint, or objection from Hobson.

In his bill Hobson stated specifically that he did not now "seek to recover any sums paid by the Texas companies for alleged administrative expenses, alleged salaries and alleged reimbursement of expenses." Directed mainly toward an accounting for moneys claimed to have been repaid to Wineburgh on account of loans he had made, and for moneys paid in the purchase of the Langever plant, his bill did not specifically claim the items he recovered on. They were claimed after their disclosure as a part of the general accounting the court required.

We find no basis in the evidence for the decree as to these. The audits, like all other items, were year to year expenses running over the whole seven-year period. They covered the Hobson, the United, the Dallas, the Waco, and the Borich companies. They were regular and proper, indeed, necessary, charges upon the business of the holding company and the affiliated and allied corporations. We think the District Judge was led into the error of holding that these expenditures were made wholly for Wineburgh's benefit by attaching too much significance to the action of the Wineburghs in withholding the audits from plaintiff. Peevish, contentious, and unwarranted as was this gesture, it could not have the effect of changing these seven-year audits which prudence and business judgment required the companies to have made into a mere personal enterprise of Wineburgh's.

We think, too, that, in holding the payment to Schlesinger wrong, the testimony of Hobson as to the budget he made up showing a $10,000 salary for Schlesinger, and that this was reduced by his withdrawal, his testimony that Schlesinger was to act "as solicitor for our interests," and particularly his letter agreeing that Schlesinger should be paid, have been overlooked. They make it clear that the payment was a proper charge.

As to the surplus funds of the United on deposit with the Hobson Company, it is perfectly clear that they may not be recovered under either aspect of the bill. The view we have taken that they are company funds and not the individual funds of Wineburgh and Hobson disposes adversely of the personal aspect of the bill. Viewed as a stockholders' suit, it is equally plain that they may not be recovered. No claim whatever is made in the bill on behalf of the United of Texas or on behalf of Hobson, that this money is being or has been diverted or appropriated by Wineburgh or the Hobson Company, or withheld from the uses for which the United Company had put it there. There is certainly no such proof. The claim as to it is merely that it is not the money of United of Texas, but Hob-

son's money which Wineburgh as his trustee withholds from him.

The decree is reversed, and the cause is remanded, with directions to dismiss the bill for want of equity.